UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
                                    :
KEVIN PEOPLES,                      :        03 Civ. 1472 (SAS) (JCF)
                                    :
              Petitioner,           :            REPORT AND
                                    :          RECOMMENDATION
       - against -                  :
                                    :
GLENN S. GOORD,                     :
Commissioner, New York State        :
Department of Corrections           :
                                    :
              Respondent.           :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE SHIRA A. SCHEINDLIN, U.S.D.J.:

Kevin Peoples brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for attempted robbery in the third degree following a jury trial in New York State Supreme Court, New York County.  In his pro se petition, Mr. Peoples alleges that: (1) the evidence was legally insufficient to support his conviction; (2) the court denied him a fair trial by refusing his request for a missing witness charge; and (3) his sentence of fifteen years to life imprisonment as a persistent felony offender was cruel and unusual and violated his right to have critical factual issues decided by a jury on the basis of proof beyond a reasonable doubt.[1]  For the following reasons, I recommend that the petition be denied.

_____

[1]  Mr. Peoples incorporates in this petition the arguments he presented in his state appellate brief.

1

<u>Background</u>

On February 9, 1999, Rojelio Hernandez was working as a deliveryman for Domino's Pizza. (Tr. at 378-79).[2] At 1:00 a.m., Mr. Hernandez was called to make his last delivery of the day at 415 West 118th Street in Manhattan. (Tr. at 380-81). Mr. Hernandez rode his bicycle to the location and, after chaining it to a fence, delivered the pizza. (Tr. at 382, 394-95). The delivery took approximate three to four minutes. (Tr. at 382). Mr. Hernandez did not notice any people on the street at that time. (Tr. at 382, 396). Following the delivery, Mr. Hernandez returned to his bicycle and saw an individual, whom he later identified as Mr. Peoples, standing next to it. (Tr. at 383). Mr. Hernandez testified that the individual was wearing a dark jacket and had a beard. (Tr. at 399-401). According to Mr. Hernandez, Mr. Peoples approached him and demanded, "Give me the money." (Tr. at 383). Mr. Hernandez testified that Mr. Peoples put his hand in his pocket "pointing with something" that looked like either "a razor or a gun." (Tr. at 384). Because Mr. Peoples' hand was in his pocket, Mr. Hernandez could not identify the object that he was holding. Mr. Hernandez began walking backwards and told Mr. Peoples that he did not have any money, but only a credit card. (Tr. at 384-85). At that point, the petitioner walked away. (Tr. at 385).

Mr. Hernandez then began following Mr. Peoples toward

_____

[2] "Tr" refers to the transcript from the criminal trial.

Amsterdam Avenue. (Tr. at 385-86). He walked his bicycle because he noticed that the tire was flat. (Tr. at 388). When he first started following the petitioner, Mr. Hernandez was approximately 30 feet behind him. (Tr. at 407). Mr. Hernandez lost sight of the man he was following for a few seconds as he turned a corner. He regained visual contact shortly thereafter, however, and was certain that he again saw the person who had tried to rob him. (Tr. at 385, 392). Mr. Hernandez followed Mr. Peoples across Morningside Avenue and saw him walking down a set of steps leading into a park. (Tr. at 386). As this point, Mr. Hernandez saw a patrol car from Columbia University driving past, and he flagged it down. (Tr. at 386-87). He began speaking to Columbia University Security Officers Candido Caraballo and Lieutenant Brian Tesseyman, speaking mostly in Spanish as Officer Caraballo translated for Lieutenant Tesseyman. (Tr. at 294-99, 386-87). He reported the incident to the officers, who directed Mr. Peoples to stand by the patrol car. (Tr. at 299). As Mr. Caraballo spoke with Mr. Peoples, Lieutenant Tesseyman called a third uniformed Columbia University Security Officer, Daniel Rodriguez, who arrived shortly thereafter. (Tr. at 298-99, 313-14, 323).

When Mr. Rodriquez arrived, he spoke with Mr. Hernandez and was ordered by Lieutenant Tesseyman to handcuff Mr. Peoples. (Tr. at 314, 324-25). Mr. Rodriquez "patted [Mr. Peoples] down" to look for a "big object" and, after finding nothing, handcuffed him with

his hands behind his back. (Tr. at 326-27). He then placed Mr. Peoples into the left side of the backseat of the patrol car. The door of the car remained open. (Tr. at 327). After speaking with Mr. Hernandez again, Mr. Rodriquez removed the petitioner from the patrol car and searched his coat pockets. Again he found nothing. (Tr. at 327-28, 341-42, 349-50). Mr. Peoples was placed back inside the car and he moved to the right side of the backseat. (Tr. at 328-29, 355-57).

Lieutenant Tesseyman called the security base at the University in order to contact the police. After approximately five minutes, several police officers arrived, including Officers Shawn Jenkins and Jason Medina. (Tr. at 329, 344, 358, 363). Officer Jenkins spoke with one of the Security Officers and then to Mr. Hernandez while Officer Medina translated for him. (Tr. at 363-64). Officer Jenkins then took Mr. Peoples into custody. (Tr. at 364). After Mr. Peoples was removed from the backseat of the patrol car, Mr. Rodriquez noticed that the bottom portion of the right seat cushion had been slashed open. (Tr. at 330, 365-66). The slit was approximately an inch wide, and after searching the opening, Mr. Rodriquez found a "little boxcutter, a little blade" inside the opening. (Tr. at 330-31, 365). Both Mr. Rodriquez and Mr. Caraballo testified that prior to their encounter with Mr. Peoples, the backseat cushion had been undamaged. (Tr. at 308-09, 322-23). After removing the blade, Mr. Rodriquez and Officer

Jenkins examined Mr. Hernandez's bicycle tire and found that it had been similarly slashed. (Tr. at 332, 366, 389).

On February 24, 1999, a grand jury indicted Mr. Peoples for Attempted Robbery in the First Degree, a violation of New York Penal Law §§ 110.00 and 160.15(3). After a jury trial, Mr. Peoples was acquitted of attempted first-degree robbery but convicted of the lesser included offense of attempted third-degree robbery in violation of New York Penal Law §§ 110.00 and 160.05. On September 23, 1999, he was sentenced, as a persistent felony offender, to an indeterminate prison term of fifteen years to life. (S. at 19).[3] In June, 2000, attorney Carol Santangelo of the Legal Aid Society submitted an appellate brief to the Appellate Division, First Department, on Mr. Peoples' behalf. The petitioner also submitted a pro se supplemental brief. In both briefs, Mr. Peoples argued that the jury's verdict was not supported by sufficient evidence and that it was against the weight of the evidence. He further claimed that his enhanced sentence as a persistent felony offender was unconstitutional because it was excessive and because the sentencing court, rather than the jury, made key findings by a preponderance of the evidence. Finally, he argued that the court erred in refusing to give a missing witness charge. (Brief for Defendant-Appellant ("App. Brief"); Pro Se Supplemental Brief on Behalf of Defendant-Appellant ("Supp. App. Brief")). On October

---

[3] "S." refers to the transcript of the sentencing proceedings.

30, 2001, the Appellate Division unanimously rejected all of the petitioner's claims and affirmed his conviction. People v. Peoples, 287 A.D.2d 413, 732 N.Y.S.2d 331 (1st Dep't 2001). On January 23, 2002, the New York Court of Appeals denied Mr. Peoples' application for leave to appeal. People v. Peoples, 97 N.Y.2d 707, 739 N.Y.S.2d 108 (2002). Mr. Peoples then filed the instant petition.

Discussion[4]

---

[4] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and of mixed questions of law and fact. See Thompson v. Keohane, 516 U.S. 99, 107-12 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002). Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

     A decision is contrary to clearly established Federal law if it "contradicts the governing law" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court. [Williams v. Taylor, 529 U.S. 362, 405-06 (2000)]. An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable. Id. at 409-12. Instead, a federal court should review a state court's interpretation of federal law using a standard of objective reasonableness. Id. at 409. Objective unreasonableness includes an unreasonable refusal "to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should

6

A. Sufficiency of the Evidence

Mr. Peoples asserts that there was insufficient evidence to support his conviction.[5]  In particular, he argues that: (1) Mr. Hernandez's identification was inadequate since on the night in question Mr. Peoples was wearing "a distinctive army-fatigue

---

have, in reason, governed." Kennaugh v. Miller, 289 F.3d 36, 45 & n.2 (2d Cir. 2002).  The "increment of incorrectness beyond error . . . need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)(internal quotation marks omitted).

Yung v. Walker, 296 F.3d 129, 135 (2d Cir. 2002).

The AEDPA standard applies to this case since Mr. Peoples filed his petition after the Act's effective date.  See Brown, 283 F.3d at 498 n.2.  Nevertheless, since the first two of the petitioner's claims fail under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis as to them.  Cf. Kruelski v. Connecticut Superior Court for the Judicial District of Danbury, 316 F.3d 103, 106-07 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts assess first whether state court's ruling was erroneous under "correct interpretation" of the federal law at issue, then whether the ruling was unreasonable).  Similarly, Mr. People's challenge to his sentence as cruel and unusual can also be resolved using the pre-AEDPA test.  However, as discussed below, his argument that his sentence was based on fact-finding that should have been conducted by the jury is most efficiently addressed under the AEDPA standard.

[5] The petitioner also claims that his conviction was against the weight of the evidence.  (Petition for Writ of Habeas Corpus ("Pet.") at 2nd unnumbered page).  This claim is not cognizable in a habeas corpus proceeding.  See Ventura v. Artuz, No. 99 Civ. 12025, 2000 WL 995497, at *8, n.12 (S.D.N.Y. July 19, 2000); Rodriguez v. O'Keefe, No. 96 Civ. 2094, 1996 WL 428164, at *4 (S.D.N.Y. July 31, 1996), aff'd, 122 F.3d 1057 (2d Cir. 1997).  Courts are precluded from reviewing a weight of the evidence claim because it is a "pure state law claim." Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001).

jacket" and Mr. Hernandez only recalled that the perpetrator had a beard and a dark jacket; (2) the police never recovered a gun despite Mr. Hernandez's initial statements that he thought the perpetrator was holding a gun; and (3) that Mr. Hernandez "tailored his testimony to satisfy the People's theory of prosecution." (Pet. at 2nd unnumbered page).

There is a "very heavy burden placed upon a defendant challenging the sufficiency of the evidence underlying his conviction." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995) (internal quotations and citation omitted). To succeed, the petitioner must demonstrate that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); see also Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999); Knapp, 46 F.3d at 178. A federal habeas court reviewing a sufficiency of the evidence claim does not make an independent determination as to whether the evidence demonstrates guilt beyond a reasonable doubt. Jackson, 443 U.S. at 318-19. Rather, the court must construe the evidence in the light most favorable to the prosecution, and defer to the jury's resolution of any conflicts in the testimony and its assessment of the witness' credibility. Id. at 319; see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993) (Jackson inquiry asks only whether decision to convict was rational, not whether it was correct); Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994)

8

(the jury is "exclusively responsible for determining a witness'
credibility").

      1. <u>Eyewitness Identification</u>

     Mr. Peoples first claims that Mr. Hernandez's identification
was unreliable since he had "minimal opportunity to observe the
person who demanded money from him, and appeared to have paid
little attention to what he looked like." (App. Br. at 18). Mr.
Peoples argues that Mr. Hernandez was "unable to recall even the
most general characteristics of the would-be robber; indeed, [he]
was unable to describe the perpetrator's race or skin color, age,
build, height, weight, hair style or color." (App. Br. at 18).
Mr. Hernandez admitted that the only features of the perpetrator
that he noticed were the dark jacket and a beard. Moreover, the
petitioner claims that Mr. Hernandez's testimony that he briefly
lost sight of the man but was able to recognize him again once he
saw him again "cannot be believed" given the "evidentiary
weaknesses" in his initial identification. (App. Br. at 19).

    The respondent argues that Mr. Hernandez had "an excellent
opportunity to observe petitioner face-to-face from a distance of
only six feet and with the aid of an outside light." (Memorandum
of Law in Support of Answer Opposing Petition for a Writ of Habeas
Corpus ("Resp. Memo.") at 11). The respondent contends that Mr.
Hernandez's identification was "corroborated by the recovery of the
razor from the car seat where petitioner [had] been sitting after

his apprehension." (Resp. Memo. at 13). "It is of no significance that Hernandez never provided the security officers or the police with a description of petitioner since petitioner was present when Hernandez reported the incident, and Hernandez needed only to point petitioner out to the officers." (Resp. Memo. at 15). The respondent also relies on the fact that Mr. Hernandez "unequivocally identified petitioner at trial as his assailant based on his observations of petitioner during the crime." (Resp. Memo. at 15).

The admission of identification evidence violates the Due Process Clause of the Fourteenth Amendment if "under all the circumstances of [the] case, there is a very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 116 (1977) (internal quotation marks and citation omitted); see Dunnigan v. Keane, 137 F.3d 117, 128 (2d Cir. 1998). "Short of that point, such evidence is for the jury to weigh." Brathwaite, 432 U.S. at 116. The constitutional validity of identification testimony is analyzed according to a two-step process. First, the court must determine whether the procedure by which the initial identification was obtained was impermissibly suggestive. See United States v. Wong, 40 F.3d 1347, 1359 (2d Cir. 1994); Bond v. Walker, 68 F. Supp. 2d 287, 301-02 (S.D.N.Y. 1999), aff'd, 242 F.3d 364 (2d Cir. 2000). If it was, the admission of the evidence will nevertheless satisfy constitutional standards if the identification

was independently reliable.  See Brathwaite, 432 U.S. at 114;
Dunnigan, 137 F.3d at 128; Wong, 40 F.3d at 1359.  In order to make
that determination, the court must examine factors including the
opportunity of the witness to view the suspect at the time of the
crime, the witness' degree of attention, the accuracy of the
witness' prior description of the perpetrator, the level of
certainty demonstrated by the witness, and the length of time
between the crime and the identification.  Neil v. Biggers, 409
U.S. 188, 199-200 (1972); accord Brathwaite, 432 U.S. at 114;
Dunnigan, 137 F.3d at 128.

In this case, Mr. Peoples argues that Mr. Hernandez did not
have an adequate opportunity to view and identify him, and
therefore his testimony alone was insufficient to establish his
guilt beyond a reasonable doubt.  Mr. Peoples' contention that Mr.
Hernandez's testimony was insufficient to establish his guilt is
without merit.  The testimony of a single, uncorroborated witness
is generally sufficient to support a conviction.  See, e.g., United
States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979); United States
v. Smith, 563 F.2d 1361, 1363 (9th Cir. 1977).  In order for
eyewitness testimony to be "unbelievable as a matter of law," it
has to be so incredible that "no reasonable juror could believe
[the eyewitness]." United States v. Rodriguez, 702 F.2d 38, 43 (2d
Cir. 1983).

During trial, Mr. Peoples' defense attorney conducted an

in-depth cross-examination regarding Mr. Hernandez's ability to make an accurate identification. (Tr. at 391-93, 398-400). In that cross-examination, defense counsel pointed out several factors affecting the reliability of Mr. Hernandez's testimony, including that it was extremely dark outside when Mr. Hernandez first saw the perpetrator and that he remembered very few details about the individual's appearance other than his dark jacket and beard. (Tr. at 393, 399-400). Counsel also questioned Mr. Hernandez on how he was able to maintain visual contact with the petitioner when he had to bend down to unchain his bicycle from the fence. (Tr. at 395-98). Counsel attempted to discredit Mr. Hernandez's testimony by suggesting how difficult it would have been for Mr. Hernandez to follow the petitioner silently while pushing his bicycle, and he focused much of his questioning on the fact that while Mr. Hernandez was following the individual he was ten yards away and the perpetrator's back was turned to him. (Tr. at 406-09).

While these considerations may affect the weight of the evidence, they do not render Mr. Hernandez's testimony wholly unbelievable. Mr. Hernandez claimed to have observed the assailant for about five or six seconds, only losing sight of him for about three or four seconds while he was following him. (Tr. at 406, 418). Additionally, Mr. Hernandez claimed that he recognized Mr. Peoples as the perpetrator when the security officers took him into custody. (Tr. at 418). Since jurors could reasonably believe Mr.

12

Hernandez's account, even in light of defense counsel's cross-examination, Mr. Peoples' challenge to the sufficiency of the evidence based on the eyewitness identification should be rejected

　　　2. Tailored Testimony

　　　Mr. Peoples next claims that Mr. Hernandez's testimony is not credible and that he tailored it to satisfy the prosecution's theory of the case. (App. Br. at 15). Specifically, he alleges there was insufficient evidence to convict him since Mr. Hernandez originally claimed that the perpetrator pointed what he believed to be a "pistol," and Mr. Peoples was not found to have had a gun. (App. Br. at 15, 22). At trial, Mr. Hernandez testified that the perpetrator had his hands in his pockets and was "pointing with something" that he identified as either "a razor or a gun, I really don't know." (Tr. at 384). The petitioner claims that this testimony was not credible since he initially told the security officers that the perpetrator was pointing a gun at him, and only stated that it could have been a razor after a gun was not found. According to Mr. Peoples, Mr. Hernandez added the testimony about the razor purely to support the prosecution's case. "[S]ince the razor was discovered long after the incident, the only way for Hernandez to have made up such a story is if he had been told prior to his testimony that [Mr. Peoples] had been charged under that theory." (App. Br. at 22). The respondent argues that Mr. Hernandez never expressed complete certainty about what type of

13

weapon the perpetrator was pointing at him, and simply knew that the perpetrator "was threatening him with violence." (Resp. Memo. at 16). Moreover, the respondent argues that this issue involves a credibility determination and as such is "within the province of the jury." (Resp. Memo. at 16).

At trial, defense counsel questioned Mr. Hernandez about what type of weapon was pointed at him during the incident. Counsel asked Mr. Hernandez numerous questions about whether he could tell what was in the perpetrator's pocket and whether he had told the police that it was a "pistol." (Tr. at 404-05). Mr. Hernandez testified that the assailant "had something in his pocket" and that he had told the security officers that he "didn't know what [the perpetrator] had in his pocket at the time he was pointing at me with [it]." (Tr. at 405).

The jury is "exclusively responsible for determining a witness' credibility." Bossett, 41 F.3d at 830 (quoting United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993)). The court must defer to the jury's resolution of any conflicts in the testimony and its assessment of the witnesses' credibility. Jackson, 443 U.S. at 319; United States v. LeRoy, 687 F.2d 610, 616 (2d Cir. 1982); see also Herrera, 506 U.S. at 401. Therefore, federal habeas corpus courts are not allowed to reassess fact-specific credibility judgements made by the jury at trial. Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996).

None of the allegations Mr. Peoples makes in connection with
Mr. Hernandez's testimony are appropriately considered by this
Court.  All of the alleged inconsistences involve the credibility
of the witness, the determination of which is the province of the
jury.  Given that Mr. Hernandez was questioned by both attorneys on
this issue during trial, the jury had ample opportunity to make its
credibility determinations.   Since there was sufficient evidence
to support the verdict, this claim must fail.

    B.  <u>Missing Witness Charge</u>

Mr. Peoples next argues that his constitutional rights were
violated when the trial court refused to give a missing witness
instruction to the jury.  Although the issue was not raised in the
appellate brief filed by Mr. Peoples' attorney, Mr. Peoples did
discuss it in his supplemental brief.   In his brief, Mr. Peoples
argued that Lieutenant Tesseyman should have been called as a
witness for the prosecution since he was the officer who wrote the
incident report.  (Supp. App. Br. at 9).  Mr. Peoples claims that
he requested that Lieutenant Tesseyman be called as a witness, but
was told by the prosecutor that he was on vacation.  (Supp. App.
Br. at 9).  Mr. Peoples claims that Lieutenant Tesseyman "had prior
knowledge of what was said through his interpreter officer."
(Supp. App. Br. at 10).  The respondent claims that the petitioner
never requested a missing witness charge, and accordingly, the
Appellate Division found this claim to be unpreserved and  rejected

it.  (Resp. Memo. at 18).  See Peoples, 287 A.D.2d at 413, 732 N.Y.S.2d at 331.

A federal court may not review a federal question in a habeas corpus proceeding if the state court's "decision rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 261 (1989) (quotations and citation omitted).  The state court must have "clearly and expressly" rejected the claim based on state procedural grounds for federal review to be barred.  Id. at 263; Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir. 1995); see also Coleman v. Thompson, 501 U.S. 722, 733 (1991).

Here, the Appellate Division plainly held that the petitioner's missing witness charge claim was unpreserved.[6]  As a result, the claim is unreviewable unless the petitioner can show either cause for the default and prejudice resulting therefrom or that a fundamental miscarriage of justice would result if the claim were not reviewed.  See Coleman, 501 U.S. at 749-50; Harris, 489 U.S. at 262; Fama, 235 F.3d at 809.  Mr. Peoples has demonstrated neither; therefore, this claim should be dismissed.

---

[6] The Appellate Division did not specifically address the missing witness claim.  However, it did state that "Defendant's remaining contentions, including those contained in his pro se supplemental brief, are unpreserved and we decline to review them in the interest of justice.  Were we to review these claims, we would reject them."  Peoples, 287 A.D.2d at 413, 732 N.Y.S.2d at 331.

C. <u>Sentence</u>

The remainder of Mr. Peoples' claims relate to his sentence of fifteen years to life imprisonment as a persistent felony offender. The petitioner claims that his sentence was unduly harsh and "an improvident exercise of the court's discretion" as well as a violation of the Eighth Amendment's proscription against cruel and unusual punishment. (App. Br. at 24, 28). Additionally, he claims that under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the discretionary persistent felony offender statute, CPL § 400.20(1)(b), is a violation of the Sixth Amendment and the Due Process Clause of the Fifth Amendment since it allows judges to sentence defendants above the maximum range without the factual basis for that sentence being submitted to a jury and proven beyond a reasonable doubt. (App. Br. at 24, 28-29).

1. <u>Length of Sentence</u>

The petitioner claims that after being adjudicated as a persistent felony offender, the court imposed an unduly harsh and cruel and unusual sentence given his character and life circumstances. The respondent counters that this claim was rejected on an independent and adequate state procedural ground by the Appellate Division. The respondent also argues that the claim fails on the merits. (Resp. Memo. at 23-25).

a. <u>Procedural Forfeiture</u>

As discussed above, a federal court may not consider an issue

17

of federal law raised in a petition for habeas corpus if a state court's prior denial of that claim rested on an independent and adequate state ground.  See Harris, 489 U.S. at 262; Wainwright v. Sykes, 433 U.S. 72, 81 (1977).  However, if the state law ground relied on is procedural, federal habeas review is precluded only if the last state court rendering judgment clearly and expressly states that its judgment rests on a procedural bar.  Harris, 489 U.S. at 263.  In this case, Mr. Peoples raised two distinct challenges to his sentence -- one based on its length and the other based on the court's reliance on judicial fact-finding in setting the sentence.  In ruling on the former, the Appellate Division found that the trial court "properly exercised its discretion in sentencing [the petitioner] as a persistent felony offender in view of his lengthy history of serious crimes."  Peoples, 287 A.D.2d at 413, 732 N.Y.S.2d at 331.  Thus, with respect to the length of Mr. Peoples' sentence, the Appellate Division did not find his claims unpreserved, but instead addressed the merits.  It is therefore necessary for this Court to do the same.

b.  Merits

To the extent that the petitioner is contending simply that the trial court abused its discretion in imposing an unduly harsh sentence, he has not stated a federal constitutional claim cognizable in a habeas corpus proceeding.  See Estelle v. McGuire, 502 U.S. 62, 63 (1991) ("it is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions"); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law"). By contrast, his claim that the sentence is cruel and unusual and therefore rises to the level of an Eighth Amendment violation is reviewable. The mere fact that the sentence falls within the range authorized by state law does not immunize it from scrutiny, for "no penalty is <u>per</u> <u>se</u> constitutional." <u>Solem v. Helm</u>, 463 U.S. 277, 290 (1983); <u>accord</u> <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). A sentence may be so disproportionate to the crime for which the defendant was convicted as to be a violation of the Eighth Amendment. <u>See</u> <u>Solem</u>, 463 U.S. at 290-92; <u>Harmelin</u>, 501 U.S. at 997-98 (Kennedy, J., concurring).

That is not the case here, however. Mr. Peoples was sentenced to a term of imprisonment of fifteen years to life as a persistent felony offender following a conviction for attempted robbery. Yet, the Supreme Court has held that a sentence of twenty-five years to life in prison imposed on a recidivist who stole three golf clubs did not violate the Eighth Amendment. <u>See</u> <u>Ewing v. California</u>, 538 U.S. 11, 17-18, 30-31 (2003). Similarly, it has held that two consecutive sentences of twenty-five years to life under a repeat offender statute for theft of videotapes worth $150 was not an unreasonable application of clearly established federal law. <u>See</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 66, 73-77 (2003). If the

sentences in those cases are not unconstitutionally disproportionate, then neither is the sentence imposed on Mr. Peoples.

### 2. Sentencing Procedure

Finally, the petitioner argues that under Apprendi his sentence is unconstitutional because the trial judge increased his term of imprisonment beyond the statutory maximum on the basis of factual determinations that should have been made by a jury on the basis of proof beyond a reasonable doubt. On the basis of a conviction for Attempted Robbery in the Third Degree, standing alone, Mr. Peoples would have been subject to an indeterminate term of imprisonment of from two to four years.[7] As someone previously convicted of two or more felonies, however, he could be sentenced to a term of imprisonment with a minimum of between fifteen and twenty-five years and a maximum of life, provided that the sentencing court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest[.]" N.Y. Penal Law §§ 70.10(1)(a) & (2), 70.00(2)(a) & 3(a)(i). The trial court in

---

[7] Attempt to commit Robbery in the Third Degree is a class E felony, normally punishable by a term of imprisonment from one to four years. N.Y. Penal Law §§ 160.05, 110.05, 70.00(2)(e) & (3). However, as a second felony offender, Mr. Peoples' minimum sentence would be set at one-half of the maximum term imposed. N.Y. Penal Law § 70.06(4)(b).

this case held a hearing and made the factual findings upon which the enhanced sentence was predicated.

The respondent argues that Mr. Peoples' Apprendi claim is procedurally barred because it was not presented to the sentencing court and that, in any event, it fails on the merits. Both of these contentions are fully disposed of by the recent decision of the Second Circuit in Brown v. Greiner, ___ F.3d ___, 2005 WL 1314429 (2d Cir. June 3, 2005). On the basis of Brown, the procedural default argument must be rejected, but the petitioner's Apprendi claim fails on the merits.

a. Procedural Forfeiture

The Brown case was consolidated for appeal with two other cases that raised similar issues, Rosen v. Walsh and Ramos v. Lord. In Rosen, the petitioner's direct appeal had been rejected by the Appellate Division and he had been granted leave to appeal to the New York Court of Appeals by the time that the Supreme Court decided Apprendi. Brown, ___ F.3d at ___, 2005 WL 1314429, at *3. Accordingly, "Rosen then argued for the first time before the New York Court of Appeals that the increase in his sentence beyond the otherwise applicable maximum, based on the sentencing judge's findings under the persistent felony offender statute, violated his Sixth Amendment right to a jury trial." Id. at ___, 2005 WL 131449, at *3. The Court of Appeals concluded that Mr. Rosen's Apprendi claim was barred because he failed to raise it before the

sentencing court.  Id. at ___ , 2005 WL 1314429, at *4 (citing People v. Rosen, 96 N.Y. 2d 329, 335, 728 N.Y.S.2d 407, 410 (2001)).  However, it reached this conclusion only after finding that the "mode of proceedings" exception to the rule against considering unpreserved issues did not apply.  That exception allows consideration of unpreserved claims that allege errors going to the organization of the court or its essential procedures.  Id. at ___ , 2005 WL 131449, at *4.  The exception was inapplicable, according to the Court of Appeals, because Mr. Rosen had not demonstrated that the Sixth Amendment required any specific fact-finding in connection with sentencing as a persistent felon other than the fact of the prior convictions, and that function was properly performed by a judge rather than a jury.  Id. at ___ , 2005 WL 1314429, at *3-4.  The Second Circuit, then, concluded that the state court's decision on preservation was "interwoven" with a determination on the merits of the Apprendi claim, not an independent state ground for rejecting that claim, and therefore did not constitute a procedural bar preventing the federal courts from considering the claim.  Id. at ___ , 2005 WL 1314429, at *6-7.

        In Ramos, the defendant had been sentenced by the time Apprendi was decided.  The Appellate Division, citing the Court of Appeals decision in Rosen, held that the Apprendi claim was unpreserved since the defendant had not asserted it at sentencing.  Id. at ___ , 2005 WL 1314429, at *5 (citing People v. Ramos, 287

A.D.2d 471, 731 N.Y.S.2d 50 (2d Dep't 2001)).  After the Court of
Appeals denied leave to appeal, Ms. Ramos initiated a habeas corpus
proceeding, but the district court dismissed the petition on the
basis that the claim was procedurally barred.  <u>Id.</u> at ___, 2005 WL
1314429, at *5.  However, since the Appellate Division had relied
on <u>Rosen</u>, and since the Second Circuit had found that procedural
forfeiture was not warranted in that case, the Circuit likewise
held that there was no procedural bar to reaching the merits in
<u>Ramos</u>.  <u>Id.</u> at ___, 2005 WL 1314429, at *7.

    The instant case is in precisely the same posture as <u>Ramos</u>.
Because the Supreme Court did not decide <u>Apprendi</u> until Mr. Peoples
was sentenced, he raised the issue of judicial fact-finding for the
first time on his appeal to the Appellate Division.  That court,
citing <u>Rosen</u>, held that "[d]efendant's constitutional challenge to
the procedure under which he was sentenced as a persistent felony
offender is unpreserved for appellate review and, in any event, is
without merit."  <u>Peoples</u>, 287 A.D.2d at 413, 732 N.Y.S.2d at 331.
As the Second Circuit held with respect to <u>Ramos</u>, then, the ground
relied on by the state court to reject Mr. Peoples' <u>Apprendi</u> claim
was not independent of the merits and does not create a procedural
bar.

            b. <u>The Merits</u>

    That determination is cold comfort to the petitioner, however,
since the Second Circuit in <u>Brown</u> also found that in upholding New

York's discretionary persistent felony offender sentencing procedures, the state courts had not deviated from federal constitutional law as established in <u>Apprendi</u>. That analysis is fully applicable to the instant case.

Under the AEDPA, deference must be accorded to a state court's interpretation of federal law where the state court has decided the petitioner's claim on the merits. <u>See</u> 28 U.S.C. § 2254(d); <u>Brown</u>, ___ F.3d at ___, 2005 WL 1314429, at *7. In <u>Brown</u>, the court held that the state court decision in <u>Rosen</u> had been on the merits and that, because the court in <u>Ramos</u> had cited <u>Rosen</u>, the decision in <u>Ramos</u> was likewise on the merits. <u>Brown</u>, ___ F.3d at ___, 2005 WL 1314429, at *7. So too, here, the Appellate Division relied on <u>Rosen</u>, and its decision was therefore on the merits.

Thus, this Court must review Mr. Peoples' claim under the deferential standard of § 2254(d), which prohibits granting the petition unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court[.]" 28 U.S.C. § 2254(d). Thus, the appropriate inquiry is "not whether the state court correctly interpreted the doctrine of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasoonable in light of the holdings of the United States Supreme Court at the time." <u>Id.</u> at ___, 2005 WL 1314429, at *8. In this case, the

critical Supreme Court holding is, of course, <u>Apprendi</u>.  While later decisions help elucidate <u>Apprendi</u>, they may not be considered because they were issued both after the Appellate Division issued the decision under review and after Mr. Peoples' decision became final.[8]

The court in <u>Brown</u> went on to determine that it was not unreasonable to find that New York's persistent felony offender statute is consistent with the dictates of <u>Apprendi</u>.  The court noted that the determination to be made by the sentencing judge "is a vague, amorphous assessment of whether, in the court's 'opinion,' 'extended incarceration and life-time supervision' of the defendant 'will best serve the public interest.'"  <u>Brown</u>, ___ F.3d at ___, 2005 WL 1314429, at *9.  The statute "does not enumerate any specific facts that must be found by the sentencing court before it can conclude that the extended sentence is in the public's 'best . . . interest.'"  <u>Id.</u> at ___, 2005 WL 1314429, at *9.  The

---

[8] In <u>Brown</u>, the court noted that it was unclear which date a federal court should look to in assessing "clearly established Federal law." ___ F.3d at ___, 2005 WL 1314429, at *8 n.3.  As in that case, the uncertainty need not be resolved here, because the later date still preceded any of the cases that provide a gloss on <u>Apprendi</u>.  Mr. Peoples' conviction became final on April 23, 2002, 90 days after he was denied leave to appeal to the New York Court of Appeals. <u>United States v. Cotton</u>, 535 U.S. 625 (2002), the first Supreme Court case to elaborate on <u>Apprendi</u>, was decided on May 20, 2002.  <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), and <u>Harris v. United States</u>, 536 U.S. 545 (2002), were both handed down on June 24, 2002.  <u>Blakely v. Washington</u>, ___ U.S. ___, 124 S. Ct. 2531 (2004), and <u>United States v. Booker</u>, ___ U.S. ___, 125 S. Ct. 738 (2005), were each decided in subsequent years.

Second Circuit concluded that "[i]t was not unreasonable for the [state court] to conclude that such determinations regarding the defendant's history, character, and offense fall into a different category from the essential statutory elements of heightened sentencing, or functional equivalents thereof, that were addressed by the Supreme Court's <u>Apprendi</u> ruling," and therefore held that the writs of habeas corpus sought by each of the petitioners there must be denied. <u>Id.</u> at ___, 2005 WL 1314429, at *9. That determination controls here, and Mr. Peoples' <u>Apprendi</u> claim must therefore be rejected.

<u>Conclusion</u>

For the reasons set forth above, I recommend that Mr. Peoples' application for a writ of habeas corpus be denied and the petition be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Shira A. Scheindlin, Room 1620, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          June 15, 2005

Copies mailed this date to:

Kevin Peoples
99-A-5665
Attica Correctional Facility
Box 149
Attica, New York   1401-0149

Nicole Beder, Esq.
Assistant District Attorney
One Hogan Place
New York, New York   10013